BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE CHRISTINE KEHOE, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May an "on-line" charter school receive state funding for the instruction of pupils who do not reside in the county where the school is chartered or in an adjacent county?
 CONCLUSION
An "on-line" charter school may not receive state funding for the instruction of pupils who do not reside in the county where the school is chartered or in an adjacent county.
 ANALYSIS
The question presented for resolution concerns "on-line" charter schools that provide instruction through the use of computer and communications technology. (See Ed. Code, § 51865, subd. (a); Cal. Code Regs., tit. 5, § 11963.5.)[1] We are asked whether such a school may receive state funding for the instruction of pupils who do not live in the school's home county or in an adjacent county. We conclude that state funding is unavailable in these circumstances.
Preliminarily, we note that the Legislature encourages the use of computer and communications technology in providing instruction to the pupils of the state. In 1991, the Legislature enacted section 51865 (Stats. 1991, ch. 1011, § 2), which declares as follows:
 "(a) It is the intent of the Legislature that legislation be enacted to implement the policy objectives set forth in this section with regard to distance learning. For purposes of this article, `distance learning' means instruction in which the pupil and instructor are in different locations and interact through the use of computer and communications technology. Distance learning may include video or audio instruction in which the primary mode of communication between pupil and instructor is instructional television, video, telecourses, or any other instruction that relies on computer or communications technology.
 "(b) Distance learning should be utilized by the state to achieve the following educational goals:
 "(1) Equity in education, which requires that every pupil in California's public schools . . . have equal access to educational opportunities, regardless of where he or she lives or how small a school the pupil attends.
 "(2) Quality in education, which would be enhanced through the creative application of telecommunications, as pupils are given the opportunity to interact with pupils from other cultures and geographical locations, and with outstanding educators from other educational institutions.
 ". . . . . . . . . . . . . . . . . . . . . . . . . .
 "(c) To the extent that funding is made available for this purpose, a coordinated distance learning system should be developed to serve the following high priority education needs:
 ". . . . . . . . . . . . . . . . . . . . . . . . . .
 "(3) The enhancement of curriculum to meet the needs of high-risk pupils who would be likely to drop out of traditional classroom programs.
 "(4) The expansion of course offerings in subjects that include, but are not limited to, foreign languages, science, and mathematics, to rural and inner-city secondary schools that are unable to provide the college preparatory and enrichment courses that their pupils require and that other secondary schools provide.
 ". . . . . . . . . . . . . . . . . . . . . . . . . .
 "(f) In expanding the use of distance learning technology, the state should emphasize the delivery of education and training services to populations currently not receiving those services, the ease of access by educational institutions to the technology, and the lower cost over time of providing instruction through distance learning rather than on site.
 ". . . . . . . . . . . . . . . . . . . . . . . . . .
 "(h) The state should ensure that the same standards are applied to distance learning for course and program quality, course content, pupil achievement levels, and coherence of curriculum that are currently applied for those purposes to traditional classroom instruction at public educational institutions.
 "(i) The state should encourage collaboration between the private sector and educational institutions in the use of technology, both to enhance the quality of education in the classroom and to expand the delivery of educational services to the worksite."
Keeping in mind these benefits of using computers and communications technology in instructing the pupils of the state, we turn to the organization and structuring of charter schools. "A charter school within a particular school district is established when a petition, containing the proposed charter for the school and signed by a specified percentage of designated people, is submitted to the district's governing board and the board grants the charter." (Sequoia Union High School Dist. v.Aurora Charter High School (2003) 112 Cal.App.4th 185, 189.) A charter school is normally required to operate within the boundaries of the chartering district. (§ 47605, subd. (a)(1).)[2] Charter schools serve a variety of purposes, as described in section 47601:
 "It is the intent of the Legislature . . . to provide opportunities for teachers, parents, pupils, and community members to establish and maintain schools that operate independently from the existing school district structure, as a method to accomplish all of the following:
 "(a) Improve pupil learning.
 "(b) Increase learning opportunities for all pupils, with special emphasis on expanded learning experiences for pupils who are identified as academically low achieving.
 "(c) Encourage the use of different and innovative teaching methods.
 "(d) Create new professional opportunities for teachers, including the opportunity to be responsible for the learning program at the schoolsite.
 "(e) Provide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system.
 "(f) Hold the schools established under this part accountable for meeting measurable pupil outcomes, and provide the schools with a method to change from rule-based to performance-based accountability systems.
 "(g) Provide vigorous competition within the public school system to stimulate continual improvements in all public schools."
Charter schools are authorized to instruct their pupils via the Internet. An "on-line" charter school provides "distance learning" (§ 51865, subd. (a)) and "computer-based education," which are forms of "nonclassroom-based instruction" (§ 47612.5, subd. (d)(1)). While charter schools may generally receive state funding for their programs if they meet certain standards (§ 47612), they are expressly permitted to receive state funding for their "nonclassroom-based instruction" under specified conditions. Subdivision (d)(1) of section 47612.5 states:
 "Notwithstanding any other provision of law . . ., a charter school that has an approved charter may receive funding for nonclassroom-based instruction only if a determination for funding is made pursuant to Section 47634.2 by the State Board of Education. The determination for funding shall be subject to any conditions or limitations the State Board of Education may prescribe. The State Board of Education shall adopt regulations on or before February 1, 2002, that define and establish general rules governing nonclassroom-based instruction by charter schools offering nonclassroom-based instruction. . . ."
Subdivision (a)(1) of section 47634.2 in turn provides:
 ". . . The State Board of Education shall adopt regulations setting forth criteria for the determination of funding for nonclassroom-based instruction. At a minimum the regulation shall specify that the nonclassroom-based instruction is conducted for the instructional benefit of the pupil and substantially dedicated to that function. In developing these criteria and determining the amount of funding to be allocated to a charter school pursuant to this section, the State Board of Education shall consider, among other factors it deems appropriate, the amount of the charter school's total budget expended on certificated employee salaries and benefits and on schoolsites . . ., and the teacher-to-pupil ratio in the school."
The State Board of Education ("Board") has complied with the Legislature's mandate by adopting regulations governing the state funding of charter schools for their nonclassroom-based instruction, including distance learning and computer-based education. (Regs. 11963-11963.7, 19850-19854.) In particular, Regulation 11963.5 authorizes an on-line charter school to receive state funding under the following conditions:
 "A virtual or on-line charter school is one in which at least 80 percent of teaching and student interaction occurs via the Internet.
 "(a) A virtual or on-line nonclassroom-based charter school may receive approval of a funding determination with no maximum pupil-teacher ratio if the charter school has and maintains an 8 or above Academic Performance Index (API) rank in either its statewide or similar schools ranking and has no less than a 6 in the other of these two rankings.
 "(b) In order to be funded pursuant to (a) above, a virtual or on-line charter school, must demonstrate that:
 "(1) The school has met its overall and subgroup API growth targets.
 "(2) Instructional expenditures are at least 85 percent of the overall school budget. A substantial portion of these expenditures (at least 25 percent of the charter school's general purpose entitlement and categorical block grant as defined in Education Code section 47632), are spent on technology that directly benefits students and teachers and results in improved student achievement.
 "(3) Computer-based instruction and assessment is provided to each student and includes the use of an on-line instructional management program, which at a minimum includes standards-based guided lessons, lesson plans, initial testing of students, periodic assessment of student achievement, and the use of other measurements of student progress over a period of time.
 "(4) Teachers are provided with technology tools and print media, which at a minimum must include: standards-aligned instructional materials, computer, printer, monitor, Internet service, telephone, staff development that provides for the monitoring of student progress, and a means of electronic communication for frequent student contact.
 "(5) All students are provided an individualized learning plan that is based on initial testing of the students and that is monitored either remotely or in person, by the teacher to evaluate student progress.
 "(6) All students are provided access to a computer, Internet service, printer, monitor, and standards-aligned materials based on State Board adopted academic content standards for each grade level and for each subject studied.
 "(7) All students eligible for special education supports and services receive those supports and services in accordance with their individualized education program.
 "(8) Charter school admission practices will not have high performing students or recruit a student population that is of a higher socioeconomic group or lower racial or ethnic representation than the general population of the county or counties served. Admission practices not reflective of the county or counties served shall be cause for denial by the State Board of Education under this section."
Although the regulations specifically governing on-line charter schools do not contain a pupil residency requirement, such a requirement is generally applicable to all schools offering "independent study" programs. (§§ 47612.5, subd. (b), 51747.3, subd. (b); Regs. 11963.1, 19581, subd. (d)(1)). Independent study programs are described in section 51745 as follows:
 "(a) . . . Educational opportunities offered through independent study may include, but shall not be limited to, the following:
 "(1) Special assignments extending the content of regular courses of instruction.
 "(2) Individualized study in a particular area of interest or in a subject not currently available in the regular school curriculum.
 "(3) Individualized alternative education designed to teach the knowledge and skills of the core curriculum. Independent study shall not be provided as an alternative curriculum.
 "(4) Continuing and special study during travel.
 "(5) Volunteer community service activities that support and strengthen pupil achievement.
 ". . . . . . . . . . . . . . . . . . . . . . . . . ."
Independent study programs are subject to extensive restrictions and limitations. (§§ 517455-1749.3; 78 Ops.Cal.Atty.Gen. 253, 254-258 (1995).)
The Board has adopted a regulation specifying that all schools providing nonclassroom-based instruction must comply with independent study program requirements. Regulation 11963.1 states:
 "This article [Regulations 11963-11963.7 describing the funding procedures for classroom-based and nonclassroom-based instruction in charter schools] does not change the requirement that nonclassroom-based instruction in charter schools comply with the provisions of [sections 51745-51749.3]."
Sections 51745-51749.3 are the statutory requirements for independent study programs. Regulations 19851, 19852, and 19853 similarly equate nonclassroom-based instruction with independent study programs.
These regulations implement the Legislature's directive that the independent study program requirements apply regardless of whether a school's independent study programs are characterized as "home study," "work study," "distance and computer-based education," or other term. (See § 51747.3, subd. (a).) Subdivision (b) of section 51747.3 sets the "same county or adjacent county" pupil residency requirement for the funding of all independent study programs:
 ". . . [I]ndependent study average daily attendance shall be claimed by school districts, county superintendents of schools, and charter schools only for pupils who are residents of the county in which the apportionment claim is reported, or who are residents of a county immediately adjacent to the county in which the apportionment claim is reported."
The Board's regulations require on-line charter schools to comply with the restrictions and conditions placed upon independent study programs. One of these conditions is that the pupils must reside in the charter school's home county or in an adjacent county in order for the school to receive state funding for the pupils' instruction.
We conclude that an on-line charter school may not receive state funding for the instruction of pupils who do not reside in the county where the school is chartered or in an adjacent county.
[1] All further references to the Education Code are by section number only, and all further references to title 5 of the California Code of Regulations are by regulation number only.
[2] Under certain circumstances, a charter school that is unable to locate within the jurisdiction of the chartering school district may establish one site outside the boundaries of the school district, but within the county within which that school district is located. (§ 47605, subd. (a)(5).)